**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CARRIE GALLAGHER, | ) | |
| | ) | |
| Plaintiff, | ) | No.  2:20-cv-00049 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert J. Colville |
| CHARTER FOODS, INC., | ) | |
| CHARTER CENTRAL, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge.

Plaintiff Carrie Gallagher  ("Gallagher" or "Plaintiff") alleges that Defendants, Charter

Foods, Inc. and Charter Central, LLC (collectively, "Charter Foods"), failed to pay her and all

other similarly situated Assistant Managers ("AMs") overtime compensation between January

10, 2017 and January 1, 2020, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et

seq*. ("FLSA"). The court has jurisdiction over the FLSA claims pursuant to 28 U.S.C. §§ 1331,

1332, 1337 and 29 U.S.C. §216 (b).

Presently pending before the court is Plaintiff's motion for conditional certification of the

collective action under the FLSA.  (ECF No. 40).  For the reasons that follow, the motion will be

granted and the plaintiff will be authorized to disseminate the proposed notice and opt-in consent

forms.


I. **Background**

The allegations in the First Amended Complaint ("FAC") (ECF No. 15), are as follows.

Gallagher resides in Donora, Pennsylvania. Defendant Charter Foods, together with its related

entities (including its subsidiary Defendant Charter Central) owns and operates approximately 309 franchised Taco Bell, KFC, Pizza Hut, Long John Silver's and A&W restaurants in 12 states, including Pennsylvania. ECF No. 15, at ¶¶ 2, 16, 26, 57.   Between December 2018 and June 2019, Gallagher was employed by Charter Foods as an AM at a Taco Bell restaurant in Washington, Pennsylvania. Throughout her employment as an AM with Charter Foods, Gallagher was scheduled to work at least 50 hours each week.  Gallagher estimates that on average, during each week of her employment she worked approximately 60 hours (often more), including the weeks leading up to and including certain holidays.  (FAC ¶10).   Gallagher spent the vast majority of her time performing the same duties as nonexempt employees, including serving customers, preparing food, working the drive-thru, counting inventory, unloading trucks, and cleaning the restaurant. (FAC ¶11).  The work Gallagher performed was at the direction, and for the benefit, of Charter Foods. (FAC ¶12).

Pursuant to Charter Foods' policy of classifying AMs as exempt from overtime, Gallagher was not paid premium overtime compensation for all hours worked over forty (40) in a workweek. (FAC ¶13).  Charter Foods applies the same employment policies, practices, and procedures to all AMs nationwide. (FAC ¶18).  Together with Defendant Charter Central, LLC, Charter Foods employed (or acted in the interest of an employer towards) Plaintiff and (directly or indirectly, jointly or severally) controlled and directed the terms of her employment and compensation. (FAC ¶ 20).   Charter Foods operated in concert and together through related activities with Charter Central, LLC so that the actions of one may be imputed to the other and/or so that they operate as joint employers within the meaning of the FLSA. (FAC ¶ 21).

During the relevant period, Defendants employed nearly 900 AMs, all of whom, until January 1, 2020, were classified as exempt from the FLSA's overtime requirement.   Plaintiff

alleges that she and Defendants' AMs were improperly classified as exempt and denied overtime compensation for all hours worked above forty (40) in a work week. ECF No. 15, at ¶¶ 1, 5, 6, 13, 63. Defendants' violations were deliberate and its exemption policy was uniformly applied in order to reduce restaurant labor costs – as demonstrated by the considerable overtime hours Plaintiff was required to work in order to perform routine, hourly tasks such as serving customers, ringing customers up on the cash register, preparing food, working the drive-thru, stocking, counting inventory, and cleaning the restaurant. ECF No. 15, at ¶¶ 3, 11, 88-91.

The parties have engaged in limited discovery in this case, including Interrogatories and Requests for Production of Documents, depositions of named Plaintiff (ECF No. 41-3, "Ex. B") and Charter's 30(b)(6) designated agent, Wayne P. Ferguson (ECF No. 41-2, "Ex. A"). Plaintiff has also filed a Notice of Filing Declarations in Support of Motion for Conditional Certification and Court-Authorized Notice. (ECF No 49). The declarations are from three former employees of Defendants: Richard Ringwald, Angela Nuss, and Robin Casdorph, who opted-in to the case after Plaintiff's Motion for Conditional Certification was filed. (ECF Nos 49-1, 49-2, and 49-3, "Exs. S, T, and U"). Ringwald, Nuss, and Casdorph were employed by Defendants as Assistant Managers in New Hampshire, Pennsylvania, and West Virginia, respectively. We further note that the Defendant has provided, *inter alia*, declarations of various employees, including those who are familiar with Plaintiff's and opt-in Plaintiffs' employment history and training, as well as Defendants' training and corporate policies and procedures on a broader scale.

In her motion, Plaintiff argues the record evidence obtained thus far supports a finding she is similarly situated to AMs nationwide. She states she has shown that regardless of the location of the restaurant in which they worked, AMs (1) were uniformly classified as exempt from overtime and not required to record the hours they work; (2) were paid a salary and

received the same benefits; (3) were subject to Defendants' uniform restaurant policies and procedures; (4) were subject to the same job descriptions and expected to perform the same job duties; (5) were trained using the same materials; (6) worked more than forty (40) hours in a workweek but were not paid overtime compensation; and (7) were together the victims of a single policy, practice, or plan that violates the FLSA (i.e., to misclassify AMs as exempt in order to reduce restaurant labor costs). She further contends Defendants' policy, practice, or plan applies regardless of the location of the restaurant where AMs worked, their length of employment, their supervisor, or any other relevant factor. Plaintiff posits she easily satisfies the lenient standard applicable at this first-stage of the two-step certification process, hence, the Court should grant conditional certification of the following collective:[1]

> All exempt "Assistant Managers" who worked for Defendants in the
> United States at any time between January 10, 2017 and January 1, 2020
> and who worked more than 40 hours during one or more workweeks (the
> "AM Collective").

According to Plaintiff, the size of the putative AM collective is less than 900 people and the total number of defendants' restaurants is 307. (ECF No. 53 at 15, ECF Nos 54-6 at ¶4).

## II. **Standard of Review**

Collective actions brought under the FLSA, unlike class actions under Federal Rule of Civil Procedure 23, may be conditionally certified by the court to jumpstart and facilitate the notice process to potential collective action members. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74, (2013). Although "conditional certification is discretionary, the Supreme Court has recognized its importance. A district court's early intervention in the preparation and

---

[1] This proposed class differs from the one proposed in the FAC, wherein named Plaintiff originally sought to represent a collective of all current and former AMs, however variously titled, who work (or worked) at any of Defendants' 'Taco Bell' franchised restaurants in the United States during the relevant time period. (ECF 15). The collective now proposed expands the collective to include AMS at any Charter brand, not just Taco Bell.

distribution of notice to potential participants serves legitimate purposes including avoidance of a multiplicity of duplicative suits and establishing cut-off dates to expedite disposition of the action." *Halle v. W. Penn Allegheny Health Sys. Inc*., 842 F.3d 215, 224 (3d Cir. 2016) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171-72 (1989).

Conditional certification "requires a named plaintiff to make a 'modest factual showing' – something beyond mere speculation – to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Halle*, 842 F.3d at 224 (quoting *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012)). In other words, this initial step of conditional certification is a determination of whether similarly situated plaintiffs exist. *Zavala*, 691 F.3d at 536 (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)). In deciding whether employees in a putative collective are similarly situated for conditional certification, "[r]elevant factors include (but are not limited to): whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment. Plaintiffs may also be found dissimilar based on the existence of individualized defenses." *Zavala*, 691 F.3d at 536-37. Courts making a determination on a conditional certification motion "typically rely on the pleadings and affidavits of the parties to determine the suitability of conditional certification[,]" and given the "modest burden" during the first stage of the proceedings, "motions for conditional certification are generally successful." *Rood v. R&R Express, Inc.*, No. 2:17-CV-1223-NR, 2019 WL 5422945, at *2 (W.D. Pa. Oct. 23, 2019) (citations omitted).

We "must adhere to the two-tiered process outlined by the Third Circuit in *Camesi [v.*

*Univ. of Pittsburgh Med. Ctr.*, 2009 WL 1361265 *3 (W.D. Pa. May 14, 2009)], and at [step one], the Court cannot address and adjudicate either [a defendant's] defenses or the merits of Plaintiffs' FLSA claims." *McConnell v. En Eng'g, LLC*, 2020 WL 6747991, at *3 (W.D. Pa. Oct. 8, 2020); *see also Rood* 2019 WL 5422945, at *3 (rejecting arguments that plaintiffs were exempt and that litigating the claims as a collective would require "many fact-specific mini-trials" because "[b]oth arguments 'obscure the scope of the instant inquiry' by asking the Court to prematurely 'engage in a merits-based analysis.'")

## III. Discussion

### A. Conditional Certification

The court must determine whether there "exists an identifiable class of employees within which some of the employees were subjected to an alleged unlawful policy or practice in a manner that will permit a finding that the employees were similarly situated." *Vasil v. Dunham's Athleisure Corp.*, 2015 WL 7871360, at *3 (W.D. Pa. Dec. 4, 2015). Turning to the substance of the conditional certification motions, Plaintiff has made a modest factual showing in support of conditional certification.

First, we note that Plaintiff has made a modest factual showing that AMs perform the primary duties (roughly 80-90% of their work time) serving customers, preparing food, working the drive-thru, counting inventory, unloading trucks, and cleaning the restaurant. Ex. B, at 205:22-206:14. Charter Foods acknowledges that AMs perform these duties. Ex. A, at 77:1-78:16. AMs' primary duties do not involve hiring, firing, disciplining, promoting, setting rates of pay for, and managing employees, or other substantive management tasks. ECF 15, at ¶¶ 64, 66; Ex. B, at 113:7-115:22, 221:5-12, 223:5-233:18. Charter Foods admitted that AMs are expected to perform the same primary duties regardless of the brand, size or hours of operation of the

restaurant in which they work, regardless of AMs' prior employment experience and tenure at Charter Foods, and regardless of the restaurant manager ("RM") under whom they work. Ex. A, at 72:1-74:8. Furthermore, all AMs must undergo two to six weeks of training, using common materials and e-learning modules, and are expected to do so regardless of the brand or location of the restaurant in which they work. Ex. A at 54, 77, 82-83, 85-87. Prior to January 1, 2020, when Defendants reclassified AMs as non-exempt employees, AMs were paid a salary and no overtime, regardless of the number of hours they worked each week or the brand or location of the restaurant in which they worked. Ex. A, at 51:9-53:2; 58:17-20; Ex B, at 205:5-7. In addition, exempt AMs were eligible for a bonus each year, as well as vacation and sick days, health insurance, and participation in a 401(k). Ex. A, at 58:1-60:15; 61:19-62:22.

The record evidence also shows exempt AMs were required to work at least 50 hours each week (minus a 30-minute lunch break each shift), including during training. Ex. A, at 162:14-164:24; Ex. B, at 200:21-201:5. It is alleged, and Gallagher has testified, that because Charter Foods' restaurants are busy and understaffed, and in order to reduce restaurant labor costs, AMs work significantly longer hours. ECF No. 15, at ¶¶ 88-90; Ex. B, at 208:11-211:0. As a result, on average AMs work between sixty hours to seventy hours each week. Ex B, at 205:8-21. Prior to their reclassification as non-exempt employees, throughout the relevant period AMs were also not required by Defendants to record their hours each week. Ex. A, at 160:17-161:14.

Gallagher has also shown AMs were uniformly classified as exempt. Ex. A, at 52:19-54:2, 65:4-19 (confirming the decision to classify AMs as exempt was not made based on the brand, size, location, and hours of operation of the restaurant, the restaurant general manager under whom they worked, their prior employment experience, or tenure at Defendants). Thus, according to Plaintiff, during the period they were classified as exempt, Defendants failed to pay

any overtime (or other) compensation to AMs for working more than forty hours in a workweek. *Id.,* at 58:17-20; Ex. B, at 205:5-9.

In addition, Plaintiff has shown that defendants have a uniform job description for the AM position, i.e. they expect AMs' primary duty to be to "assist the restaurant manager in running the store. They're second in command." Ex. A, at 72:12-73:2. Defendants' expect AMs to perform this primary duty regardless of the brand, size or hours of operation of the restaurant in which they work, AMs' prior employment experience and tenure at Charter Foods, and the restaurant general manager under whom they work. Ex. A, at 72:1-74:8. Charter knows that AMs serve customers, prepare food, work the drive-thru, count inventory, unload trucks, and clean the restaurant. Ex. A, at 77:1-78:16; Ex. B, at 217:6-24.

Furthermore, we note Plaintiff has established through record evidence that AMs are subject to the same corporate policies and procedures and are reviewed using the same metrics, and thus, for purposes of the pending motion, AMs' work is closely controlled by Defendants and the company has extensive policies, procedures, and work rules for how AMs must perform their duties and how restaurants must operate. AMs' performance is subject to evaluation based on the same metrics. Ex. P., Ex. A at 148-152.

In opposition to the motion, defendants raise numerous arguments, the majority of which relate to the merits of the FLSA claims, including the ultimate question of whether the AMS were properly classified as exempt or not. For example, Defendant posits that AM duties differ from location to location, and depend on the regional general manager (RGM), and further, differ because some AMs operate as RGMs more than others. In *Fitch v. Giant Eagle*, in reviewing the Report and Recommendation of Chief Magistrate Judge Eddy, we explained that such individualized inquiries are more appropriate for the second phase of FLSA cases:

The Court finds that Judge Eddy neither misinterpreted nor misapplied the law in not resolving Giant Eagle's merits-based defenses at the conditional certification stage. *See Bowser v. Empyrean Servs., LLC*, 324 F.R.D. 346, 352 (W.D. Pa. 2018) ("Whether individualized determinations will predominate and render this case unsuitable for a collective action is 'more appropriately reviewed during step two of the certification process.'" (quoting *Rocha v. Gateway Funding Diversified Mortgage Servs., L.P.*, 2016 WL 3077936, at *9 (E.D. Pa. June 1, 2016))); *see also Stallard v. Fifth Third Bank*, No. 2:12-CV-01092, 2013 WL 12308493, at *3 (W.D. Pa. Dec. 12, 2013) ("Defendant may turn out to be correct on the merits, but unless [it is] patently clear that Plaintiffs cannot prevail as a matter of law (which is not the case now on the record before the Court), or that the commonality of generally applicable employment and compensation policies necessarily pales in comparison to individualized determinations of liability (and in the Court's estimation it does not, at least at this point), an examination of the merits of the claims and defenses does not occur at this stage of the proceedings." (citing *Hively v. Allis-Chalmers Energy, Inc.*, 2013 WL 5936418, at *7 (W.D. Pa. Nov. 5, 2013))); *Goodman v. Burlington Coat Factory*, No. CIV.A. 11-4395 JHR, 2012 WL 5944000, at *5 (D. N.J. Nov. 20, 2012) ("At this stage, the Court's role is not to evaluate the merits of Plaintiffs' claim that Burlington misclassifies ASMs as 'exempt'; rather, the Court's role is to determine whether Mr. Goodman has made a modest factual showing of the manner in which this allegedly unlawful policy affected him and the way it affected other Burlington ASMs."); *Friscia v. Panera Bread Co.*, No. CV163754ESSCM, 2018 WL 3122330, at *8 (D. N.J. June 26, 2018) ("This argument is inappropriate at the notice stage, however, because it goes to Panera's merits defenses.").

2:18-cv-01534-RJC-CRE, (W.D. Pa. Feb. 23, 2021) (ECF No. 207).

Based on the record before us, summarized *supra*, we find that Plaintiffs have met their burden for conditional certification. We recognize the procedural posture of this case, wherein there has been a preliminary period of discovery related to conditional certification only. There will be further in-depth, merits-based discovery after notices go out and the second phase occurs. Opt-in Plaintiffs have shown they had near identical experiences with respect to the type of work, job descriptions, training, working over 40 hours per week, and spending the majority of their time performing non-exempt work, while being classified as exempt. And, as Defendant's admit, during the relevant time period (prior to re-classification) they maintained a policy by which they denied overtime compensation to AMs, regardless of location or the particular brand of restaurant, which plaintiffs allege arose from a goal to reduce labor costs at their restaurants.

Finally, we note that the initial class definition in the complaint has been justifiably expanded to Defendants' other restaurant brands, Plaintiffs having unearthed similarities and similarly situated AMs at those locations. Expansion of the collective is warranted.

Accordingly, because Plaintiff has satisfied the lenient standard applicable at this first-stage of the two-step certification process, we will grant conditional certification of the following collective:

> All exempt "Assistant Managers" who worked for Defendants in the United States at any time between January 10, 2017 and January 1, 2020 and who worked more than 40 hours during one or more workweeks (the "AM Collective")

## B. Equitable Tolling

On April 30, 2021, Plaintiff filed a Motion for Equitable Tolling (ECF No. 63), requesting equitable tolling of the statute of limitations of the claims of the putative members of the collective from September 11, 2020 (the date the motion for conditional certification was filed) until sixty days after the notice of this lawsuit is sent to the potential opt-ins. Indeed there have been some delays in this case, including the filing of an Amended Complaint, the period of phase one discovery, and the Court's delay in deciding the motion for conditional certification, due, in part, to the impact of the COVID-19 pandemic. Defendants oppose the motion.[2]

Under the FLSA, a plaintiff's claim to recover unpaid overtime compensation must be commenced within two years of the alleged violation (i.e., the accrual of the cause of action) – unless the violation is willful, in which case the limitations period is enlarged to three years. 29 U.S.C. § 255(a). A named plaintiff's claim commences "on the date when the complaint is filed," whereas an opt-in plaintiff's claim only commences "on the subsequent date on which [the opt-in

---

[2] The Court rejects plaintiff's argument that defendants waived their right to oppose equitable tolling, which allegedly arose from confusion over the deadline to respond to the motion.

plaintiff's] written consent is filed." 29 U.S.C. § 256(a)-(b). Thus, the FLSA's statute of limitations effectively is tolled for all named plaintiffs' claims upon filing the complaint, but it continues to run for opt-in plaintiffs until their written consents are filed with the court.

Courts have equitably tolled the statute of limitations in a FLSA action when doing so is in the interest of justice. *See, e.g., Partlow v. Jewish Orphans' Home of Southern Cal., Inc.,* 645 F.2d 757, 760-61 (9th Cir.1981) (equitable tolling proper where plaintiffs were without fault and "practical effect of not tolling the statute would be to bar forever any claim" the employees had against defendant*), abrogated on other grounds by Hoffman-LaRoche Inc. v. Sperling,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); *see also Beauperthuy v. 24 Hour Fitness USA, Inc*., 2007 WL 707475 at *8 (N.D. Cal. Mar. 6, 2007) (equitably tolling FLSA statute of limitations because of factors outside plaintiffs' control, including litigation, arbitration and settlement of related action); *see also Sullivan-Blake v. FedEx Ground Package Sys., Inc*., 2019 WL 4750141, at *6 (W.D. Pa. Sept. 2019) and cases cited therein.

We will exercise our discretion and will grant the request, in the interest of justice, in large part because the delays have been outside the control of Plaintiff and opt-in plaintiffs, and Plaintiff has exercised reasonable diligence in prosecuting this action.

### C. Notice

Defendants do not appear to object to any aspect of Plaintiffs' proposed form and method of distribution of notice of this lawsuit. Plaintiffs have proposed we permit notice to be distributed via first class mail, e-mail, text, and posted to a case-specific website where AMs may submit a consent to join form electronically. (ECF No. 41, at 14-15). This form of notice is merited in this case. *Belt v. P.F. Chang's China Bistro, Inc.*, No. 18 Civ. 3821, 2020 WL 3829026, at *9 (E.D. Pa. Jul. 8, 2020) ("[I]it is appropriate in the modern digital age to distribute

notice by mail, email, and text, because although people frequently move and change addresses, they typically retain the same email addresses and phone numbers") (collecting cases). The court must monitor the distribution of notice to ensure it is "timely, accurate, and informative." *Vasquez v. CDI Corp.*, 2020 WL7227271, at *5 (E.D. Pa. Dec. 7, 2020) (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989). We will permit the proposed notice methodology and content as proposed, and will set a prompt deadline for Defendants to produce the required contact information so that the process of notification may begin forthwith.

## IV. Conclusion

Based on the foregoing, Plaintiffs' motion for conditional certification (ECF No. 40) will be granted and the motion for equitable tolling (ECF No. 63) will be granted. An appropriate order will be entered.

Dated: June 23, 2021.

By the Court:

s/*Robert J. Colville*
Robert J. Colville
United States District Judge

cc: All counsel of record